# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF IOWA
# CENTRAL DIVISION

| | |
|---|---|
| KENNETH MAY, <br><br> Petitioner, <br><br> vs. <br><br> UNITED STATES OF AMERICA, <br><br> Respondent. | No. C21-3033-LTS <br> (Criminal No. CR19-3038-LTS) <br><br> **MEMORANDUM** <br> **OPINION AND ORDER** |

## I. INTRODUCTION

This matter is before me on Kenneth May's motion (Doc. 1) to vacate, set aside or correct his sentence pursuant to 28 U.S.C. § 2255 and motion (Doc. 23) to amend. In his initial motion, May alleges he is entitled to relief based on two claims: that his sentence should be lower because a prior state conviction that was used to determine his base offense level has been vacated (Claim 1) and that trial counsel was ineffective for failing to investigate that previous state conviction, failing to negotiate a plea agreement and failing to provide adequate advice (Claim 2). On initial review, I found that Claim 1 was procedurally defaulted but that Claim 2 should proceed. Doc. 3. Pursuant to my order, May's prior counsel[1] (Chad Primmer) filed an affidavit (Doc. 9) and supplemental affidavit (Doc. 16) in response to May's claims. The Government has filed a response

---

[1] Attorney Patrick Parry also filed an affidavit (Doc. 4) but his representation pre-dated May's claims.

(Doc. 17). May filed a supplement (Doc. 20)[2] to his motion as well as a reply (Doc. 21).

In his motion (Doc. 23) to amend, May claims Primmer was ineffective for failing to object to the criminal history category VI in the PSR because three of his prior sentences should have been treated as a single sentence under United States Sentencing Guideline § 4A1.2(A)(2). For the reasons discussed herein, I find that an evidentiary hearing is not required.

## II. BACKGROUND

On August 22, 2019, May was indicted on one count of possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). Crim. Doc. 1. On May 28, 2020, he pleaded guilty to this offense without a plea agreement. Crim. Doc. 37. On October 23, 2020, I sentenced May to 92 months' imprisonment and three years of supervised release. Crim. Doc. 47. He did not file an appeal. May mailed the initial motion on October 10, 2021, and his motion to amend on February 14, 2023.

---

[2] In his supplement, May raises an entirely new ineffective assistance of counsel claim – that counsel failed to file an appeal despite May's instruction to do so. May mailed this supplement on December 7, 2022, after the limitation period ended. Amendments to § 2255 motions must generally be filed within the same one-year time period. *Mandacina v. United States*, 328 F.3d 995, 999 (8th Cir. 2003); *see also Humphrey v. United States*, No. C19-3023-LTS, 2021 WL 2750339, at *1 (N.D. Iowa July 1, 2021). However, untimely proposed claims may relate back to the date of the original motion if the original motion was timely and "the claim asserted in the original pleading and the claim asserted in the amended pleading arose out of the same conduct, transaction, or occurrence." *Mandacina*, 328 F.3d at 1000 (citing *United States v. Craycraft*, 167 F.3d 451, 457 (8th Cir. 1999); *see also* Fed. R. Civ. P. 15(c). To arise out of the same conduct, transaction, or occurrence, the claims must be "tied to a common core of operative facts." *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (applying Rule 15(c) to a 28 U.S.C. § 2254 petition). May's proposed claim in his supplement concerns an entirely separate common core of operative facts from his original motion. It deals with counsel's representation after sentencing whereas May's original motion is based on counsel's representation in deciding whether to plead guilty and leading up to sentencing. As such, I find that it does not relate back, and therefore, is untimely.

2

### III. LEGAL STANDARDS

#### A. Section 2255

A prisoner in custody under sentence of a federal court may move the sentencing court to vacate, set aside or correct a sentence. *See* 28 U.S.C. § 2255(a). To obtain relief, a federal prisoner must establish:

> [T]hat the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or [that the judgment or sentence] is otherwise subject to collateral attack.

*Id.*; *see also* Rule 1 of the Rules Governing § 2255 Proceedings (specifying scope of § 2255). If any of the four grounds are established, the court is required to "vacate and set the judgment aside and [to] discharge the prisoner or resentence him or grant a new trial or correct the sentence as may appear appropriate." 28 U.S.C. § 2255(b).

When enacting § 2255, Congress "intended to afford federal prisoners a remedy identical in scope to federal habeas corpus." *Sun Bear v. United States*, 644 F.3d 700, 704 (8th Cir. 2011) (en banc) (citation omitted). Section 2255 does not provide a remedy for "all claimed errors in conviction and sentencing." *Id.* (citation omitted). Rather:

> Relief under [§ 2255] is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and, if uncorrected, would result in a complete miscarriage of justice.

*United States v. Apfel*, 97 F.3d 1074, 1076 (8th Cir. 1996) (citation omitted); *see also Sun Bear*, 644 F.3d at 704 ("[T]he permissible scope of a § 2255 collateral attack . . . is severely limited[.]"). A collateral challenge under § 2255 is not interchangeable or substitutable for a direct appeal. *See United States v. Frady*, 456 U.S. 152, 165 (1982)

3

("[W]e have long and consistently affirmed that a collateral challenge may not do service for an appeal."). Consequently, "an error that may justify reversal on direct appeal will not necessarily support a collateral attack on a final judgment." *Id.* (citation omitted).

"Evidentiary hearings on [§ 2255] motions are preferred, and the general rule is that a hearing is necessary prior to the motion's disposition *if a factual dispute exists*." *Thomas v. United States*, 737 F.3d 1202, 1206 (8th Cir. 2013) (emphasis added). "The district court is not permitted to make a credibility determination on the affidavits alone." *Id.* at 1206; *see also United States v. Sellner*, 773 F.3d 927, 930 (8th Cir. 2014) ("[The] district court abused its discretion when it credited the attorney's affidavit over the petitioners without first holding an evidentiary hearing."). However, no hearing is required "where the claim is inadequate on its face or if the record affirmatively refutes the factual assertions upon which it is based." *See New v. United States*, 652 F.3d 949, 954 (8th Cir. 2011) (citation omitted).

### B. *Ineffective Assistance of Counsel*

To establish a claim for ineffective assistance of counsel, a movant must prove that his attorney's representation "was 'deficient' and that the 'deficient performance prejudiced the defense.'" *Walking Eagle v. United States*, 742 F.3d 1079, 1082 (8th Cir. 2014) (quoting *Strickland v. Washington*, 466 U.S. 668, 687 (1984)). "Deficient" performance is performance that falls "below an objective standard of reasonableness," *Lafler v. Cooper*, 566 U.S. 158, 163 (2012) (citation omitted), that is conduct that fails to conform to the degree of skill, care and diligence of a reasonably competent attorney. *Strickland*, 466 U.S. at 687. Matters of trial strategy are generally entrusted to the professional discretion of counsel and they are "virtually unchallengeable" in § 2255 proceedings. *Loefer v. United States*, 604 F.3d 1028, 1030 (8th Cir. 2010). Counsel is not constitutionally ineffective because of the failure to raise a "relatively sophisticated" and "counter-intuitive argument." *Donnell v. United States*, 765 F.3d 817, 821 (8th Cir. 2014). However, "[s]trategy resulting from lack of diligence in preparation and

4

investigation is not protected by the presumption in favor of counsel." *Holder v. United States*, 721 F.3d 979, 994 (8th Cir. 2013) (citation omitted).

To establish "prejudice," a movant must "show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Lafler*, 566 U.S. at 163 (citation omitted). "Reasonable probability" means "a probability sufficient to undermine confidence in the outcome." *Strickland*, 466 U.S. at 694. That requires a "substantial," not just "conceivable," likelihood of a different result. *Harrington v. Richter*, 562 U.S. 86, 112 (2011). Ultimately, a showing of "prejudice" requires counsel's errors to be "so serious as to deprive the defendant of a fair trial, a trial whose result is reliable." *Id.* at 104 (citation omitted).

Since a movant must show both deficient performance and prejudicial effect, a court reviewing ineffective assistance claims need only address one prong if either fails. *See Williams v. United States*, 452 F.3d 1009, 1014 (8th Cir. 2006). Additionally, each individual claim of ineffective assistance "must rise or fall on its own merits," meaning that courts should not take into account the "cumulative effect of trial counsel's errors in determining *Strickland* prejudice." *Middleton v. Roper*, 455 F.3d 838, 851 (8th Cir. 2006); *United States v. Brown*, 528 F.3d 1030, 1034 (8th Cir. 2008) ("[W]e have repeatedly rejected the cumulative error theory of post-conviction relief.").

"The Sixth Amendment right to effective assistance of counsel includes representation during the plea bargaining process." *Mayfield v. United States*, 955 F.3d 707, 712 (8th Cir. 2020) (citing *Missouri v. Frye*, 566 U.S. 134, 143-47 (2012)). The two-part *Strickland* test "applies to challenges to guilty pleas based on ineffective assistance of counsel." *Hill v. Lockhart*, 474 U.S. 52, 58 (1985). Therefore, he must show that counsel's representation fell below an objective standard of reasonableness and that there is a reasonable probability that the result of the proceeding would have been different. *Id.* at 57. In the plea context, the movant must show "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would

5

have insisted on going to trial." *Id.* at 59. "A reasonable probability is a probability sufficient to undermine confidence in the outcome," which "requires a substantial, not just conceivable, likelihood of a different result." *Cullen v. Pinholster*, 563 U.S. 170, 189 (2011) (quotations omitted).

Whether there is a reasonable probability is a fact-dependent question that requires consideration of any "contemporaneous evidence to substantiate [the] defendant's expressed preferences." *Mayfield*, 955 F.3d at 712 (quoting *Lee v. United States*, 137 S. Ct. 1958, 1967 (2017) (internal quotation marks omitted)). "A defendant's representations during the plea-taking carry a strong presumption of verity and pose a formidable barrier in any subsequent collateral proceedings." *Adams v. United States*, 869 F.3d 633, 635 (8th Cir. 2017). *See also United States v. Miley*, 119 F. App'x 330, 332 (2d Cir. 2005) (concluding any prejudice from any misrepresentations by defense counsel about the consequences of a guilty plea was dispelled by the time the defendant pleaded guilty based on the court's colloquy during the plea hearing); *United States v. Lemaster*, 403 F.3d 215, 221-22 (4th Cir. 2005) ("[I]n the absence of extraordinary circumstances, the truth of sworn statements made during a Rule 11 colloquy is conclusively established, and a district court should, without holding an evidentiary hearing, dismiss any § 2255 motion that necessarily relies on allegations that contradict the sworn statements.").

## IV. DISCUSSION

May alleges his counsel was ineffective for (1) failing to investigate his Michigan drug conviction, which May asserts should have been vacated, (2) failing to negotiate a plea agreement and (3) failing to provide adequate advice. I will address each in turn after first addressing his motion to amend.

6

## A. Motion to Amend[3]

May's motion to amend is based on *United States v. Singleton*, No. 21-cv-1921-BLF, 2023 WL 1442837 (N.D. Cal. Feb. 1, 2023), in which the court vacated the movant's sentence based on a claim that counsel was ineffective for failing to object to the criminal history calculation. *Singleton*, 2023 WL 1442837, at *5-7. Singleton established that proper investigation of his prior offenses would have demonstrated that two prior offenses should have been treated as one sentence under § 4A1.2(a)(2) and reduced his criminal history by three points putting him in category IV instead of V. *Id.* May argues his case is similar:

> Mr. Primmer was ineffective for failing to object to the criminal history category VI in the PSR, 3 of movant[']s prior sentences include criminal history calculation which should have been treated as a single sentence under 4A1.2(A)(2) of the United States Sentencing Manual therefore entitling movant to relief.

Doc. 23 at 2.

Leave to amend a pleading "shall be freely given when justice so requires." Fed. R. Civ. P. 15(a). There is, however, no absolute right to amend a pleading. *See, e.g., Hammer v. Osage Beach*, 318 F.3d 832, 844 (8th Cir. 2003); *Becker v. Univ. of*

---

[3] May also filed a supplement (Doc. 24) to his motion based on *United States v. Bullock*, 679 F. Supp. 3d 501 (S.D. Miss. 2023), in which the court held that 18 U.S.C. § 922(g)(1) was unconstitutional as to the defendant. This claim is procedurally defaulted. *See Ramey v. United States*, 8F.3d 1313, 1314 (8th Cir. 1993) (explaining that § 2255 relief "is not available to correct errors which could have been raised at trial or on direct appeal."). May has not established cause or asserted actual innocence to excuse the procedural default. *See Jennings v. United States*, 696 F.3d 759, 764 (8th Cir. 2012) ("In order to obtain collateral review on a procedurally defaulted claim, a habeas petitioner must show either that there was cause for his procedural default and actual prejudice, or that he is actually innocent of the crime for which he was convicted."). Even if this claim is not procedurally defaulted, it would fail as *Bullock* is non-binding authority in this court while binding Eighth Circuit precedent has foreclosed that argument. *See United States v. Jackson*, 110 F.4th 1120, 1124-25 (8th Cir. 2024) (holding that § 922(g)(1) did not violate the Second Amendment as applied to defendant whose predicate offenses were non-violent drug offenses).

*Nebraska*, 191 F.3d 904, 908 (8th Cir. 1999); *Williams v. Little Rock Mun. Water Works*, 21 F.3d 218, 224 (8th Cir. 1994).

> [A] motion to amend should be denied on the merits "only if it asserts clearly frivolous claims or defenses." *Gamma–10 Plastics, Inc. v. American President Lines, Ltd.*, 32 F.3d 1244, 1255 (8th Cir. 1994), *cert. denied*, 513 U.S. 1198, 115 S. Ct. 1270, 131 L. Ed. 2d 148 (1995). Likelihood of success on the new claim or defenses is not a consideration for denying leave to amend unless the claim is clearly frivolous. *See id.* at 1256. Whether to grant a motion for leave to amend is within the sound discretion of the court. *See id.* at 1255; *Williams*, 21 F.3d at 224; *Brown v. Wallace*, 957 F.2d at 565.

*Becker*, 191 F.3d at 908.

> United States Sentencing Guideline § 4A1.2(a)(2) provides in relevant part:
>
> If the defendant has multiple prior sentences, determine whether those sentences are counted separately or treated as a single sentence. Prior sentences always are counted separately if the sentences imposed for offenses were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense). If there is no intervening arrest, prior sentences are counted separately unless (A) the sentences resulted from offenses contained in the same charging instrument; or (B) the sentences were imposed on the same day. Treat any prior sentence covered by (A) or (B) as a single sentence.

May's presentence investigation report (PSR) reflects a subtotal criminal history score of 14 with two points added under § 4A1.1(d) for committing the instant offense while under a sentence for a previous offense. Crim Doc. 42 at 10. Therefore, he had a total criminal history score of 16 and a criminal history category of VI.

May argues he was sentenced on the same date for the convictions described in paragraphs 27, 28 and 30 of the PSR. Doc. 21 at 9. May was sentenced on November 4, 2013, for the following crimes: reckless use of a firearm and carrying weapons (paragraph 27); theft in the second degree (paragraph 28); and manufacture, delivery or possession with intent to manufacture or deliver marijuana, possession of a firearm or offensive weapon by a felon, prohibitions involving an animal contest event, failure to

8

Case 3:21-cv-03033-LTS-KEM   Document 26   Filed 09/19/24   Page 8 of 16

affix drug tax stamp (paragraph 30). *Id.* at 9-10. He was arrested on June 7, 2012, for the offenses in paragraph 27, on November 23, 2012, for the offense in paragraph 28 and on June 21, 2013, for the offenses in paragraph 30. *Id.* As such, there are intervening arrests and the sentences were appropriately considered separately under § 4A1.2(a)(2) ("Prior sentences always are counted separately if the sentences imposed for offenses were separated by an intervening arrest (i.e., the defendant is arrested for the first offense prior to committing the second offense)"). *Compare Singleton*, 2023 WL 1442837, at *5-6 (noting the PSR was ambiguous as to when Singleton committed the first offense and finding counsel's failure to verify whether an intervening arrest occurred constituted deficient performance). Because the PSR is unambiguous and these offenses were appropriately counted separately under § 4A1.2(a)(2), this claim is clearly frivolous and May's motion to amend will be denied.

### B. *Ineffective Assistance of Counsel Claims*
#### 1. *Failure to Investigate*

May argues counsel failed to investigate his Michigan drug conviction that he asserts was vacated and should not have been included in his criminal history. As noted in the IRO, May's counsel filed an objection to the draft PSR stating: "[t]he defendant believes that [the Michigan conviction] was dismissed. As such, the defendant does not believe that he has 'a qualifying felony controlled substance offense from this case.'" Crim. Doc. 41 at 6-7. However, counsel withdrew those objections on October 20, 2020. Crim. Doc. 45.

Primmer explains that he withdrew the objections based on an agreement with the Government that if he did so, the parties would jointly recommend a sentence at the low end of the guideline range. Doc. 9. Without such an agreement, the Government was going to seek a higher sentence. *Id.* Primmer also notes that May was a felon "multiple times over" and would have scored a criminal history category VI even without the Michigan conviction. *Id.*

9

The Government responds that Wayne County, Michigan, records reflect that May was convicted on Count 1, received a deferred sentence and was placed on two years' probation. Doc. 17 at 6. It also notes that counsel objected to this prior drug conviction. *Id.* Even if counsel failed to investigate or object to this prior drug felony, the Government argues May cannot show prejudice. *Id.* It notes that aside from the Michigan drug felony, May had four other felony convictions that would qualify as either prior drug felonies or crime of violence felonies to support the base offense level under § 2K2.1. *Id.* at 7-8.

Counsel objected (Crim. Doc. 41) to the Michigan drug conviction based on May's position that it was not a qualifying felony controlled substance offense because it had been dismissed. Probation responded that records from Wayne County, Michigan, reflected that May had been convicted of Michigan Comp. Laws § 333.7401(2)(a)(iv) [attempt] and that that conviction met the definition of controlled substance offense. Crim. Doc. 42 at 7. The Michigan conviction was eventually vacated on April 27, 2021, because the revocation of May's HYTA status was in error. Crim. Doc. 54 at 3-4. As the order explains, May's HYTA status was revoked due to a December 2009 Iowa conviction, but because the Iowa offense occurred on March 9, 2009, prior to the date of the Michigan conviction on July 4, 2009, the HYTA status was improperly revoked. *Id.*

Counsel had no way of predicting that development at the time the draft PSR was filed on July 29, 2020, or at sentencing on October 23, 2020. It is well-established that "counsel's performance is not deficient by failing to predict future developments in the law." *Wajda v. United States*, 64 F.3d 385, 388 (8th Cir. 1995). Counsel also cannot be faulted for failing to understand the nuances of Michigan's HYTA program or advocate for May in Michigan courts. While May was ultimately successful in having the Michigan conviction vacated, at the time of sentencing in this case, that conviction was appropriately counted in his criminal history as a controlled substance offense. *See Adams v. United States*, 622 F.3d 608, 612 (6th Cir. 2010) ("A plea of guilty to a[n] . . . offense qualifies as a prior conviction for federal sentencing purposes when the

10

defendant is assigned as youthful trainee pursuant to the [H]YTA."). May does not challenge his other controlled substance offense, *see* Crim. Doc. 42 at ¶ 30 (a 2013 Iowa conviction for manufacture, delivery or possession with intent to manufacture or deliver marijuana). Therefore, even if counsel had maintained the objection, it likely would have been overruled and U.S.S.G. § 2K2.1(a)[4] would have applied.[5] There was no deficient performance in counsel's failure to investigate the Michigan conviction as all the information available to counsel at the time led to the conclusion that that conviction constituted a "controlled substance offense" under U.S.S.G. § 2K2.1(a). Counsel reasonably negotiated the withdrawal of an objection to that offense in exchange for the Government's recommendation to the low end of the guideline range. Because there is neither deficient performance nor prejudice, this claim of ineffective assistance of counsel fails.

### 2. *Failure to Negotiate a Plea Agreement*

May argues his counsel "did not try to help me establish an agreeable plea agreement which forced me to plead guilty and be sentenced under the [United States Sentencing Guidelines] range." Doc. 1 at 4. In his affidavit, Primmer states that May "pled guilty without a plea agreement to leave all options open at time of sentencing and after." Doc. 9. In his supplemental affidavit, Primmer explains:

---

[4] U.S.S.G. § 2K2.1(a) provides a base offense level of 26 if (A) the offense involved a semiautomatic firearm that is capable of accepting a large capacity magazine . . . and (B) the defendant committed any part of the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense.

[5] While the Government suggests that May had other felony convictions that would have constituted crimes of violence to further support the base offense level under § 2K2.1, the Government did not develop this argument and it is not persuasive. The prior convictions include reckless use of a firearm and carrying weapons. Under the categorical approach, neither of these would appear to meet the definition of "crime of violence under U.S.S.G. § 4B1.2(a). *See United States v. Hoxworth*, 11 F.4th 693, 695 (8th Cir. 2021) (explaining that *Borden v. United States*, 593 U.S. 420 (2021) "categorically excludes crimes that can be committed recklessly.").

11

> In regards to a favorable plea agreement, same was not available to Mr. May in a fashion he would have found acceptable. The United States Attorney was not willing to offer a reduced charge or any favorable sentencing concessions in exchange for a waiver of appeal, which would have been required in any plea agreement. Mr. May's best chances were to plead and argue for the best possible sentence to the Court. This issue was fairly simple and Mr. May's choices were extremely limited in this regard.

Doc. 16. The Government explains that any plea agreement would have required an appeal waiver. It notes the evidence against May was strong, including a photo of him holding the firearm, an email address associated with the storage locker in his name and that May had the keys to the storage locker where the gun was found. Doc. 17 at 8-9.

May has not identified what would have been an "agreeable" plea agreement. His main complaint is that by pleading guilty without an agreement, he was sentenced under the Guidelines. To the extent May is arguing his attorney should have attempted to reach a plea agreement pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C) in which the Government agrees to a specific sentence or sentencing range, or that a particular provision of the Sentencing Guidelines, policy statement or sentencing factor does not apply, such agreements are rare. *See Jackson v. United States*, Case No. 4:19-CV-949, 2021 WL 1380281, at *7 (E.D. Mo. Apr. 12, 2021) (explaining that binding plea agreements under Rule 11(c)(1)(C) are rare and rejecting ineffective assistance of counsel claim based on attorney's failure to secure one).

In any event, May has failed to demonstrate that he would have received a lower sentence had counsel negotiated a plea agreement. There is no evidence in the record that the Government would have agreed to a sentencing range below the Guidelines. Indeed, Primmer's affidavit and the Government's response suggest that the Government had little reason to offer anything more favorable than a joint recommendation to the lower end of the Guidelines given the strength of the evidence. That agreement was reached because May withdrew his objections to the PSR and, as stated by the Government, because "the low end of the guideline range [w]as not too far off from the

statutory max" and it wanted to "maintain some level of incentive for pleading guilty." Crim. Doc. 51 at 4-5. Even if May could demonstrate deficient performance in failing to negotiate a plea agreement (which he has not), there is nothing to suggest the outcome would have been any different. As such, this ineffective assistance of counsel claim fails.

### 3. *Failure to Provide Adequate Advice*

Finally, May argues that Primmer mishandled his case and misguided him and that he did not have the information to understand he was not being helped efficiently. Doc. 1 at 4. In his reply he clarifies "[m]isinformation given to defendant or misleading made defendant['s] plea involuntary." Doc. 21 at 6. He argues that Primmer told him that if he pleaded guilty, he would be sentenced between 51 and 63 months if he did not qualify as a career offender and that this was also stated to him at the plea hearing. *Id.* at 6-7. May argues that had Primmer investigated his prior convictions and criminal history, May would not have pleaded guilty knowing his sentencing range was actually 92 to 115 months. *Id.* at 8.

To the extent May takes issue with Primmer's advice to plead guilty without a plea agreement, that argument has been addressed above. To the extent May argues he was misled into pleading guilty, the Government notes that counsel's advice was appropriate because there was overwhelming evidence of guilt and had he gone to trial and been convicted, he would not have received acceptance of responsibility and could have faced a sentencing enhancement for obstruction of justice had he testified on his own behalf in a way that was inconsistent with the evidence presented by the Government. Doc. 17 at 9. In any event, May was advised during his plea hearing that the possible penalty for the offense was 0 to 10 years' imprisonment without consideration of the career offender enhancement. The Government estimated he would start at a base offense level of 20 but noted it could be subject to enhancement based on the firearm at issue. Primmer noted that with a base offense level of 20, minus 3 for acceptance of responsibility, he would be at a total offense level of 17. With a criminal history category of VI (the highest

13

level), his guideline range would be 51 to 63 months. He also indicated there were some questions for sentencing which was part of the reason they did not have a plea agreement.

During the plea hearing, I told May that based on counsels' representations, it appeared that 51 to 63 months would be a best-case scenario and that this was merely a prediction that was not binding. I also advised May that he could face a sentence up to the statutory maximum of 120 months, that the Guidelines were simply one factor I would consider at the time of sentencing and that his sentence could fall above or below that range and could fall all the way up the statutory maximum. Before entering his guilty plea, May stated he had no questions about how sentencing would work and indicated no one had forced or pressured him to plead guilty or made him any promises to get him to plead guilty.

While May's base offense level turned out to be 26 based on the nature of the firearm involved in the offense and that he had committed the instant offense subsequent to sustaining at least two felony convictions of either a crime of violence or a controlled substance offense, May has failed to attribute that discrepancy to any deficient performance by counsel. Indeed, counsel and the court advised May prior to pleading guilty that there were other factors to consider that could increase the applicable guideline range he faced all the way up to the statutory maximum. Because May has failed to demonstrate any deficient performance, this claim of ineffective assistance of counsel fails.

## V. CERTIFICATE OF APPEALABILITY

In a § 2255 proceeding before a district judge, the final order is subject to review on appeal by the court of appeals for the circuit in which the proceeding is held. 28 U.S.C. § 2253(a). However, unless a circuit judge issues a certificate of appealability, an appeal may not be taken to the court of appeals. § 2253(c)(1)(A). A district court possesses the authority to issue certificates of appealability under § 2253(c) and Federal Rule of Appellate Procedure 22(b). *See Tiedeman v. Benson*, 122 F.3d 518, 522 (8th

14

Cir. 1997). Under § 2253(c)(2), a certificate of appealability may issue only if a movant has made a substantial showing of the denial of a constitutional right. *See Miller-El v. Cockrell*, 537 U.S. 322, 335–36 (2003); *Tiedeman*, 122 F.3d at 523. To make such a showing, the issues must be debatable among reasonable jurists, a court could resolve the issues differently, or the issues deserve further proceedings. *See Miller-El*, 537 U.S. at 335–36 (reiterating standard).

Courts reject constitutional claims either on the merits or on procedural grounds. "'[W]here a district court has rejected the constitutional claims on the merits, the showing required to satisfy § 2253(c) is straightforward: [t]he [movant] must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong.'" *Miller-El*, 537 U.S. at 338 (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). When a motion is dismissed on procedural grounds without reaching the underlying constitutional claim, "the [movant must show], at least, that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Slack*, 529 U.S. at 484.

Having thoroughly reviewed the record in this case, I find that May failed to make the requisite "substantial showing" with respect to his § 2255 motion. *See* 28 U.S.C. § 2253(c)(2); FED. R. APP. P. 22(b). Accordingly, a certificate of appealability will not issue. If he desires further review of his § 2255 motion, May may request issuance of the certificate of appealability by a judge of the Eighth Circuit Court of Appeals in accordance with *Tiedeman*, 122 F.3d at 520–22.

## VI. CONCLUSION

For the reasons discussed herein,

1. May's motion (Doc. 23) to amend is **denied**.

2. May's § 2255 motion (Doc. 1) is **denied** and this action is **dismissed with prejudice**.

3. The clerk of court shall **close this case**.

4. A certificate of appealability will **not issue**.

**IT IS SO ORDERED** this 18th day of September, 2024.

_____
Leonard T. Strand
United States District Judge